Duncan v. Smith.

CITED in *Bitz* v. *Meyer,* 11 *Vroom* 254.

GEORGE DUNCAN v. DANIEL SMITH AND NANCY HIS WIFE

The payment of the debt secured by a mortgage by the purchaser of the equity of redemption, not being the mortgagor, does not necessarily merge the estate created by the mortgage; it becomes a question of intention, and such estate will be considered as destroyed or kept alive, as will best subserve the justice of the case.

In ejectment. On motion for new trial.

This was an action of ejectment. The premises in dispute were originally owned by the defendant, Daniel Smith, who, while he was the owner thereof, together with his wife, Nancy, executed two mortgages thereon to Oliver S. Strong and Daniel Henderson. Subsequently a judgment was obtained against Daniel Smith, and the said premises were sold thereunder to one Jelliffe, who conveyed the same to George Duncan, the plaintiff. After the sale, Smith still continued in possession of the property. In this posture of affairs, a water tax falling due and being unpaid, the premises were sold by the municipal authorities, by virtue of power in the city charter, to Nancy Smith, one of the defendants, for the term of ten thousand years. By the provisions of the charter aforesaid, the owner is privileged to redeem within two years after the sale, by returning to the purchaser the amount paid

by him, with fifteen per cent. interest thereon. A mortgagee has a similar term for redemption, and, in addition, is entitled to six months' notice of the sale. Duncan neglected to redeem as owner within the time limited, but afterwards, with the intention of redeeming as mortgagee, he paid the amount due on the mortgages above mentioned, which were thereupon delivered to him. A few days after this, these same mortgages were formally assigned over by the mortgagee to the son of the plaintiff, at the request of the plaintiff. Having thus acquired the interest of the mortgagee, as he supposed, he deposited with the city treasurer, for the benefit of the purchaser at the tax sale, the amount paid by such purchaser and fifteen per cent. thereon. This payment, both as to amount and the person to whom it was made, was strictly in accordance with the charter of the city. Upon these facts the judge, at the trial, instructed the jury, in substance, that the payment of the money on the mortgage did not destroy the estate created thereby, and that Duncan became vested with an interest thereunder, which entitled him to redeem the premises in the manner above mentioned.

The verdict was for the plaintiff, and the motion here is for a new trial.

For the plaintiff, *C. H. Winfield.*

For the defendant, *N. C. Slaight.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The decision of the present motion turns upon the point whether the plaintiff, being the owner in fee of the premises in dispute, by paying to the mortgagee the amount due on the mortgages held by him, acquired such an interest that he had the right to redeem such premises from the purchaser at the tax sale. His privilege to reclaim the property, as the absolute owner, had expired from lapse of time, and the proceedings taken by him to divest the title of the defendants, can only be sustained for the rea-

son that he represented the mortgagee, within the fair meaning of the municipal charter.

The counsel of the defendants insists that, by the mere force of the payment by the plaintiff to the mortgagee of the money due on the bonds, the estate which had been created by the mortgages became extinguished. The argument was, that it was merged in the fee, both estates having become resident in the same person. If this be so, it is obvious that both the intention of the plaintiff in paying the money, and the justice of the case are defeated. It is clear that the plaintiff, when he dealt with the mortgagee, did not intend the estate existing by virtue of the mortgages to be absorbed in the fee which he held. His object was to buy the position and rights of the mortgagee. If he has not succeeded in doing this, he will derive no benefit whatever from the large amount of money paid by him, the effect of such payment being merely to remove the two encumbrances from the premises in question, in which the defendants have a term of ten thousand years. Under these circumstances, it is evident the plaintiff was at least within the equity of the provision giving to a mortgagee the privilege of redemption, and if he is to be deprived of that privilege, it must be purely from the effect of the technical doctrine of merger as a matter of dry law.

But the application to the facts of this case of the principle of merger, in its utmost rigor, does not, as I think, lead to the result claimed for the defendants. That unity of ownership of two estates in the same land which occasions merger does not, of necessity, destroy either of such estates; its effect often is, to blend or combine them together. "The true idea of merger," says Chief Justice Ewing, in *Den* v. *Vanness*, 5 *Halst.* 106, "consists in a thorough coalescence, an indissoluble union of the merging estates; each still retaining its rights and advantages, or, perhaps, more properly speaking, each imparting to the whole its peculiar attributes." And in *Woodhull* v. *Reid*, 1 *Harr.* 128, this court, giving practical effect to the above theory, maintained that, upon

common law rules, the acquisition of the equity of redemption by the mortgagee did not prevent him, on the ground of merger, from setting up the mortgage estate against a widow's suit for dower. If, then, the estate under the mortgage, after its merger with the fee, so far subsists as to enable the party holding it to set it up in a court of law as a defence, it seems difficult to perceive why, under similar conditions, it may not be said so to subsist as to enable its owner to redeem as mortgagee, by force of the regulation above mentioned, contained in the charter of Jersey City. Indeed, a denial of such right can be supported only on the erroneous assumption, that the payment of the debt due on the mortgage is, under all possible circumstances, an extinguishment of the estate created by it. When the debt is paid by the mortgagor, this, unquestionably, is the usual result; but when such payment, as in the case now before this court, is made, not by the mortgagor but by the purchaser of the equity of redemption, it by no means follows, as a necessary consequence, that the interest created originally under the mortgage is destroyed. In many cases, on the contrary, such interest is considered, both at law and in equity, as vesting and continuing alive in the holder of the fee. And this distinction naturally arises from the peculiar situation of such owner of the encumbered property, with regard to the mortgage debt which constitutes a lien upon it. If the money secured on the estate is not due from him who pays the mortgage debt, the consequence is that such person, by paying off the encumbrance, places himself in the attitude, not of a debtor who extinguishes a liabilty by payment, but rather of a person who, by advancing the money, takes up the obligation of another. And this is the legal aspect of the transaction. As there is nothing in the nature of the business, nor in morals, which will, in such a state of affairs, prevent any one from becoming the assignee of the interest of the mortgagee, and as it can make no difference to the parties interested in the property whether such interest is acquired by a stranger or the owner of the fee, the law does

not prohibit the latter from receiving such interest and holding it, as a separate estate, in the same manner and to the same extent as a person entirely unconnected with the land could do. The general rule upon this subject is, that whenever the money due upon a mortgage is paid, it will operate, in law, either as a discharge or an assignment, as will best subserve the purposes of justice and the just intent of the party. The question, therefore, whether the mortgage estate is destroyed or preserved by payment, resolves itself, for the most part, into an inquiry as to the intention of the party in paying the money—for the law will effectuate that intention. This undoubtedly is the rule of law, well established by numerous decisions, both in this state and elsewhere. Accordingly it was held, in *Hartshorne* v. *Hartshorne*, 1 *Gr. Ch. R.* 356, that when the purchaser of the equity of redemption took an assignment of a mortgage given by the owner of the premises prior to his marriage, the widow was entitled to dower in the property only subject to such mortgage. To the same effect is the case of *Russell* v. *Austen*, 1 *Paige* 192; and the same general principle was maintained and acted upon in *Van Wagenen* v. *Brown*, 2 *Dutcher* 204; *Thompson* v. *Boyd*, 1 *Zab.* 58; *S. C.*, 2 *Id.* 543; *Chiswell* v. *Morris*, 1 *McCarter* 102; *Eldridge* v. *Eldridge*, *Id.* 195. And, indeed, so little is the technical doctrine of merger favored in law, that it has been repeatedly decided, and the rule may be considered to be now completely settled, that the estates meeting in the person will not merge unless it appears that such was the intention of such person, expressly declared or manifestly to be implied from such merger being to his advantage. 1 *Washb. R. P.* 564.

The application of the above rule of law to the facts of this case, obviously establishes the right of the plaintiff, as representative of the mortgagee, to redeem the premises in dispute from the effect of the tax sale. It was his intention, clearly proved on the trial, to use the interest he derived from the mortgagee for this purpose. The estate thus acquired, therefore, did not merge with the fee vested in

Duncan v. Smith.

him, as the law, by force of the principle above stated, to prevent his intention from being defeated, will keep the estates distinct.

But it was further insisted, that the redemption of the land by the mortgagee was for himself alone, and that it did not redound to the benefit of the owner of the fee. This construction is plainly inconsistent with the design of the legislature, and with the express regulations on this subject of the charter of the city. In the clause giving the right to the " owner, mortgagee, occupant, or person interested " in the land, the right of redemption, there is no restriction with regard to the effect of such act. Each person of the classes indicated, is to pay the same amount on exercising the privilege, and in each case the result is the same—that is, the land is redeemed. It is an error to suppose that it is only the interest of the person making the payment which is thus freed from the effect of the tax sale. See *Charter of Jersey City, Pamph. L.* 1851, *p.* 411, § 40. It will be found, also, that the subsequent parts of the same section are clearly indicative of the same intention, for the next to the last clause directs the clerk of the city, in all cases of redemption, to cancel the declarations of sale given by the city to the purchaser. If it had been the design that the redemption by the mortgagee should have no other effect but to preserve his own rights, we cannot suppose that the law would have directed, in such event, the destruction of the entire muniment of the title of the purchaser. I think it free from all reasonable doubt, that the redemption made in this case operated as a complete discharge of the premises in dispute, from the effect of the sale made by the authority of the city.

The result is, the verdict was right, and the present rule should be discharged.

Rule discharged.

CITED in *Mulford* v. *Peterson et ux.,* 6 *Vroom* 131; *Lamb* v. *Cannon,* 9 *Vroom* 365; *Parker* v. *Child,* 10 *C. E. Gr.* 43; *Hoppock's Ex'rs* v. *Ramsay,* 1 *Stew.* 417.